UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANTHONY EWING,             :
     Plaintiff,           :
                           :
v.                       :     3:25-cv-178 (SRU)
                           :
SARA A. BLOMSTROM,     :
et al.,                  :
     Defendants.       :

## **INITIAL REVIEW ORDER**

The plaintiff, Anthony Ewing, is a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC") at Osborn Correctional Institution ("Osborn").[1] He proceeds *pro se* under 42 U.S.C. § 1983 against two physicians from UConn Health Center—Dr. Sara Blomstrom and Dr. Clifford Yang—and five DOC employees who work at Osborn: Advanced Registered Nurse ("APRN") Morant, Dr. Maletz, Nurse Supervisor Keisha Johnson, Nurse Supervisor Temple Figueroa, and Health Services Administrative Remedy ("HSAR") Coordinator Michelle Cyr. Am. Compl., Doc. No. 15. He asserts claims for violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution while housed at DOC's Osborn Correctional Institution ("Osborn"). *Id.* Ewing sues Defendants in their individual and official capacities.

After initial review of the amended complaint, I will permit Ewing to proceed on his Eighth Amendment claim against APRN Morant in her individual capacity.

---

[1] I may "take judicial notice of relevant matters of public record." *Sanchez v. RN Debbie*, 2018 WL 5314916, at *2 (D. Conn. Oct. 26, 2018) (citing *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012)). The publicly-available DOC website shows that Ewing was sentenced on October 25, 2023 to a term of imprisonment of 9 years, and that he is housed at Osborn. *See* https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=238705 (last visited May 19, 2025).

## I.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.    FACTUAL ALLEGATIONS

Ewing alleges the following facts, which I consider to be true for purposes of this initial review.

On November 22, 2024, Ewing was involved in a physical altercation with another inmate. Am. Compl., Doc. No. 15, at ¶ 11. After a code blue was called, several correctional officers acted to break up the physical altercation. *Id.* at ¶ 13. Ewing was handcuffed behind his back and escorted to the medical treatment room, where his handcuffs were removed so that a nurse could examine his injuries. *Id.* at ¶¶ 15, 16.

Ewing sustained abrasions to his neck, third and fourth left fingers, and slight swelling on his fourth knuckle. *Id.* at ¶ 17. Ewing also experienced a high level of pain. *Id.* at ¶ 18. APRN Morant arranged for Ewing's transport to the emergency room for x-rays and further evaluation. *Id.*

Ewing was transported to the UConn Health Center emergency room secured in restraints, including foot shackles, handcuffs (secured in the front), belly chain, and black box. *Id.* at ¶ 19. Upon arrival at the emergency room, Ewing was placed in a wheelchair. *Id.* at ¶ 20. After intake, Ewing was brought to a room where he was handcuffed to the bedframe. *Id.* at ¶¶ 21-22.

After Ewing expressed that he had a painful finger, Dr. Blomstrom assessed that Ewing had a finger fracture and ordered X-rays, a DOC-approved splint, and pain medication (Tylenol). *Id.* at ¶¶ 21, 24, 26. Moments after Dr. Blomstrom left the room, a nurse provided Ewing with Tylenol. *Id.* at ¶ 28. A radiology technician took X-rays for Ewing's injured finger. *Id.* at ¶ 29.

Sometime later, a nurse informed Ewing that he was being discharged because he had no fractures. *Id.* at ¶ 30. When Ewing inquired whether he would receive the splint as stated by Dr. Blomstrom, the nurse stated that he had no fractures or dislocations of his finger "per Doctor's Orders" and advised that he could "buddy tape it for comfort" at his facility. *Id.* at ¶ 32. Ewing was discharged the same day. *Id.* at ¶ 35.

The following morning, November 23, 2024, Ewing woke up with excruciating pain and throbbing in his whole hand. *Id.* at ¶ 36. His fourth left finger was severely swollen and discolored. *Id.* Ewing took Tylenol to alleviate his pain. *Id.*

After Ewing notified a correction officer about his pain, he was advised to wait for the nurse who would be arriving soon for the medication pass. *Id.* at ¶ 38. Later in the morning, Ewing stopped the correction officer and nurse who were passing out medication and requested to be returned the hospital for a second opinion about his finger. *Id.* at ¶ 40. The nurse and correction officer expressed shock at the discoloration and disfigurement of the finger and promised to let the treatment nurse know about his finger. *Id.* at ¶¶ 40-42.

Ewing was seen for his finger in the afternoon by Nurse Lewis and another nurse. *Id.* at ¶ 49. Ewing advised them of his excruciating pain, anxiety, and frustration and that he wanted a second opinion. *Id.* at ¶ 50. Nurse Lewis promised to review his X-rays from the day before. *Id.* at ¶ 52. After review of the X-rays, Nurse Lewis believed that "something just d[id] not seem right" and decided to have Ewing transported to the Johnson Memorial Hospital emergency room in Stafford Springs, where more X-rays were taken. *Id.* at ¶ 53, 55-59.

A medical provider at Johnson Memorial Hospital advised Ewing that he had a non-displaced fracture and would be provided with pain medication and a splint. *Id.* at ¶ 60. Ewing received a pain medication by injection and had a splint placed on his finger. *Id.* at ¶ 61. Ewing was then discharged and returned to Osborn. *Id.* at ¶ 62.

On November 24, 2024, Ewing filed an inmate request (CN 9601) for copies of his emergency room medical records relevant to his visits on November 22 and 23, 2024. *Id.* at ¶ 64. Ewing also filed an inmate request to Nurse Supervisor Figueroa about being discharged without a proper diagnosis or treatment by UConn Health Center staff. *Id.* at ¶ 65. The next day, an APRN checked his splint and provided him with a pass to visit the medical unit every day to check his finger and the metal in his splint. *Id.* at ¶ 66. She also advised him that he was

scheduled for more X-rays on December 16, 2024.  *Id.*  Ewing informed the APRN that he felt less pain when his finger was splinted because when his finger was not splinted every movement sent "shocking and excruciating pain from his finger through[]out his arm and into his brain[.]"  *Id.* at ¶ 67.

On December 4, 2024, Ewing wrote another inmate request for copies of his medical records for his two emergency room visits.  *Id.* at ¶ 68.

On December 16, 2024, Ewing filed an inmate request to inquire about the X-rays that were scheduled for that day.  *Id.* at ¶ 69.  That same day, he received his medical records for his emergency room visits and relevant DOC records.  *Id.* at ¶ 70.

On December 18, 2024, Ewing filed another inmate request to Nurse Supervisor Figueroa about the disregard of his medical needs for his finger by UConn Health Center staff as he had not yet received a response to his original inmate request.  *Id.* at ¶ 71.  Ewing also filed a Health Service Administrative Remedy (HSAR) on December 21, 2024.  *Id.* at ¶ 72.

On January 6, 2025, Ewing spoke with APRN Morant about being provided with a small pail so that he could submerge his hand in warm water while doing finger exercises as instructed by Dr. Maletz.  *Id.* at ¶ 74.  APRN Morant refused on the stated grounds he did not "reside in a hospital."  *Id.*  Ewing explained that doing the finger exercises in water assisted with his pain tolerance.  *Id.* at ¶ 75.

On January 8, 2025, Ewing saw Dr. Maletz to discuss his rehabilitation plan.  *Id.* at ¶ 76. He explained that he suffered pain and believed that his condition was getting worse.  *Id.* Ewing requested exercise equipment such as a ball, elastic bands, and a pail.  *Id.* at ¶ 77.  Dr.

Maletz entered an order for Ewing to receive a small pail for his finger rehabilitation but otherwise denied his request.   *Id.*

On January 9, 2025, Ewing spoke with APRN Morant about Dr. Maletz's order for him to have a small pail for his finger.   *Id.* at ¶ 78.   APRN Morant again replied that he would not receive a pail because he was not staying in the hospital.   *Id.* at ¶ 79.

Nurse Supervisor Johnson had been present in the treatment room when Ewing first injured his finger on November 22, 2024.   *Id.* at ¶ 80.   She also printed out some of his medical records.   *Id.*   Ewing spoke with her on several occasions to request assistance with his medical issues, including disregard of his medical needs by UConn Health Center staff, his rehabilitation plan, and his need for rehabilitation equipment.   *Id.* at ¶ 81.   She advised Ewing that she would provide him with a ball and small pail but never provided these items to him.   *Id.*

Nurse Supervisor Johnson was also aware that Ewing had filed inmate requests, HSARs, and had an order from Dr. Maletz to receive a small pail.   *Id.* at ¶ 82.   Nonetheless, she failed to ensure that Ewing received a proper rehabilitation, equipment, or the appropriate medical standard of care.   *Id.* at ¶ 82.   She also failed to address the medical disregard of Ewing's medical needs for his fingers that had occurred at UConn Health Center.   *Id.* at ¶ 83.

On January 10, 2025, Ewing filed an inmate request for the small pail so that he could submerge his hand in warm water while he performed rehabilitation exercises.   *Id.* at ¶ 83. Despite Dr. Maletz's order to provide Ewing with a pail, Ewing still has not received it.   *Id.*

Ewing maintains that HSARC Cyr has obstructed his administrative remedies for his medical complaints under Directive 8.9.   *Id.* at ¶ 84.   Ewing alleges that he has not received a response to his request for administrative remedies complaining about his lack of appropriate

treatment at UConn Health Center for his finger or lack of a proper rehabilitation plan and equipment.  *Id.* at ¶ 85.

Ewing reviewed the X-rays from UConn Health Center and provided them to Dr. Yang. *Id.* at ¶ 87.   After examining the X-rays, Dr. Yang determined that there was "soft tissue swelling without acute fracture or dislocation" at the fourth proximal inter-phalangeal ("PIP") joint and that "[s]ome mineralization may be related to chronic tendon injury[.]"  *Id.* at ¶¶ 87-88.

## III.    DISCUSSION

Ewing asserts that he has been subjected to deliberate indifference to his medical needs in violation of the Eighth Amendment. He also asserts that he has been denied procedural due process in violation of the Fourteenth Amendment because DOC staff have failed to properly process his requests for administrative remedies.

Section 1983 of Title 42 provides that "[e]very person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."   "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'"  *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

A plaintiff seeking monetary damages from a defendant must allege facts that establish

the personal involvement of that defendant in the alleged constitutional violation.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991)).   That is true with respect to supervisory officials as well.  *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (A plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official liable for damages under section 1983. "[I]t is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had.").  *Id.*

I first consider whether Ewing has alleged any plausible claims for damages under 42 U.S.C. § 1983.

### A.    Eighth Amendment Violation

Ewing asserts his claims of Eighth Amendment medical indifference against Drs. Blomstrom, Yang, and Maletz and against Nurse Supervisors Johnson and Figueroa.

In *Estelle v Gamble*, the Supreme Court held that the Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners . . . ."  429 U.S. 97, 104 (1976). Deliberate indifference may not only be exhibited "by prison doctors in their response to the prisoner's needs," but also "by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Id.* at 104-05.   To state a plausible claim that any Defendants were deliberately indifferent to his medical needs in

violation of the Eighth Amendment, Ewing must allege that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)).

Under the objective prong, the inmate's medical need or condition must be "a serious one." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).    Regarding the subjective component of a deliberate indifference claim, a plaintiff must show that the defendant "act[ed] with a sufficiently culpable state of mind." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). *See Salahuddin v. Goord,* 467 F.3d 263, 280-81 (2d Cir. 2006) ("This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result.").    An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.    "[M]ere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., . . . a conscious disregard of a substantial risk of serious harm." *Chance*, 143 F.3d at 703 (internal quotation marks and citation omitted); *see also Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("[T]he Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law," and so "not every lapse in prison medical care will rise to the level of a constitutional violation."); *see also Harris v. Westchester Cty. Med. Ctr.*, 2011 WL 2637429, at *3 (S.D.N.Y. July 6, 2011) ("[W]ithout more, allegations of negligent treatment and misdiagnosis do not state a cause of action under the Eighth Amendment.") (cleaned up).    Thus,

an inmate may not bring an Eighth Amendment claim based on a negligent "delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs." *Harrison v. Barkley*, 219 F.3d 132, 139 (2d Cir. 2000). Of course, "[c]onsciously disregarding an inmate's legitimate medical need is not mere medical malpractice." *Id.* (cleaned up). But the "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703; *see also Hathaway*, 37 F.3d at 70 (Jacobs, J., dissenting) ("We do not sit as a medical board of review. Where the dispute concerns not the absence of help but the choice of a certain course of treatment, or evidenced mere disagreement with considered medical judgment, we will not second guess the doctors.").

### 1.    Dr. Blomstrom

Ewing complains that Dr. Blomstrom discharged him on the basis of an inaccurate diagnosis for his finger fracture. Am. Compl., Doc. No. 15, at ¶ 93. Even assuming satisfaction of the objective prong, Ewing has not alleged facts to suggest Dr. Blomstrom acted with a culpable state of mind to support deliberate indifference. Ewing alleges that Dr. Blomstrom "knew that something was seriously . . . wrong with [his] finger," but that conclusory allegation is insufficient to meet the subjective prong. *See, e.g., Ellis v. Kim*, 2024 WL 4882702, at *6 (S.D.N.Y. Nov. 25, 2024) (allegation that medical provider "'was aware of the dangers of [P]laintiff taking the blood thinner prior to the oral surgery' but still prescribed the medication" was conclusory and insufficient to support Eighth Amendment claim).

Here, no alleged non-conclusory facts support an inference that Dr. Blomstrom was aware that discharging Ewing without a splint or further medical treatment would result in his

continued pain or exacerbation of his finger injury.   Thus, Ewing's amended complaint raises at most a claim of negligence or medical malpractice, which is not sufficient to support a claim of deliberate indifference.   *See Hathaway,* 37 F.3d at 66 ("Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm.").

Accordingly, I conclude that Ewing's Eighth Amendment claim of medical deliberate indifference against Dr. Blomstrom must be dismissed as not plausible.   28 U.S.C. § 1915A(b)(1).

### 2.    Dr. Yang

Ewing claims that Dr. Yang also discharged him with a misdiagnosis and failed to provide him medical care even though Dr. Yang knew there was something seriously wrong with his finger.   Am. Compl., Doc. No. 15, at ¶ 94.   But the only allegations about Dr. Yang's conduct is that he reviewed the X-rays from UConn Health Center and noted "soft tissue swelling without acute fracture or dislocation" at the fourth proximal inter-phalangeal joint and that "[s]ome mineralization may be related to chronic tendon injury."   *Id.* at ¶ 88.   The allegations indicate that Dr. Yang rendered a different diagnosis from Dr. Blomstrom or the medical provider at Johnson Memorial Hospital, but do not describe how Dr. Yang acted or failed to act while aware that his conduct posed a substantial risk of harm to Ewing.   Because I discern no facts to support a claim that Dr. Yang acted with conscious disregard to Ewing's medical needs, I must dismiss the Eighth Amendment claim against Dr. Yang.   28 U.S.C. § 1915A(b)(1).

### 3.    Dr. Maletz

Ewing maintains that Dr. Maletz failed to provide the proper standard of care and treatment for his finger.   Dr. Maletz allegedly met with Ewing at least three times about his rehabilitation plan and provided him with an order for the small pail upon Ewing's request but denied his request for additional therapy equipment.   Am. Compl., Doc. No. 15, at ¶¶ 76-77. Ewing's claim essentially boils down to a disagreement with Dr. Maletz regarding his medical assessment of Ewing's rehabilitation treatment needs.   But the fact that Ewing may have preferred a different treatment plan or more therapy equipment does not give rise to an Eighth Amendment claim.   *Chance,* 143 F.3d at 703; *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (holding that a prisoner who was provided Motrin and complained that he required stronger pain medication did not state a claim of deliberate indifference).

A medical provider may act with deliberate indifference by consciously providing an inmate with "an easier and less efficacious" treatment plan, particularly if the provider does so because of ulterior motives, such as improper monetary incentive.   *Chance*, 143 F.3d at 703–04; *see also Braham v. Perelmuter*, 2017 WL 3222532, at *16–17 (D. Conn. July 28, 2017) (denying motion for summary judgment because a reasonable juror could infer that the defendant-dentist had chosen an unsound—but easier—treatment route by extracting several of the plaintiff's teeth rather than by trying to restore them, despite the possibility that extraction could result in the plaintiff's losing more teeth.).   But no allegations suggest that Dr. Maletz rendered his decision regarding Ewing's finger rehabilitation for any improper purpose or for some monetary incentive.   Thus, I conclude that that Ewing's Eighth Amendment claim of medical deliberate indifference against Dr. Maletz must be dismissed as not plausible.   28 U.S.C. § 1915A(b)(1).

**4.    Nurse Supervisor Johnson**

Ewing asserts that Nurser Supervisor Johnson acted with deliberate indifference by failing to provide him follow up care in compliance with the doctor's orders and adequate physical therapy for his finger, and by failing to ensure that he received a proper rehabilitation treatment plan, equipment and compliance with the standard of care.   Am. Compl., Doc. No. 15, at ¶¶ 82, 96.   He alleges that she promised but failed to provide him with a ball and pail for his rehabilitation needs.   *Id.*

I conclude that Ewing has not stated a plausible Eighth Amendment claim against Nurse Supervisor Johnson because no alleged facts reflect she acted with the requisite state of mind to support a claim of deliberate indifference.   No allegations indicate that that she consciously deprived Ewing of the pail despite being aware of his rehabilitation needs.   Ewing does not allege facts that suggest that she had the ability to provide him with a rehabilitation plan or equipment different than that ordered by Dr. Maletz.   *See Warwick v. Doe,* 2020 WL 2768804, at *5 (D. Conn. May 27, 2020) (absent facts suggesting that the defendant actually had, and failed to exercise, the power to get plaintiff in to see a dental surgeon sooner, plaintiff's allegations amounted to negligence).   Likewise, Ewing fails to allege facts to support an inference that Nurse Supervisor Johnson had the authority or ability to take any corrective action to address the misdiagnoses or inadequate treatment that he had received at UConn Hospital in the past.   A supervisory official's failure to provide redress based on notice after an alleged constitutional violation occurred does not state a cognizable claim for section 1983 liability.   *See Parker v. New York,* 2022 WL 2441215, at *4 (E.D.N.Y. July 1, 2022) (supervisor's failure to provide remedy for violation complained of in grievance was not sufficient to establish supervisor's liability); *Andrews v. Gates,* 2019 WL 2930063, at *8 (D. Conn. July 8, 2019)

(supervisor's alleged notice after the fact of an isolated incident was insufficient to support a constitutional claim).

Accordingly, I must also dismiss Ewing's Eighth Amendment claim against Nurse Supervisor Johnson.   28 U.S.C. § 1915A(b)(1).

### 5.    APRN Morant

Ewing asserts that APRN Morant violated his rights under the Eighth Amendment when she refused to provide him with a pail in accordance with Dr. Maletz's order and failed to ensure he received adequate follow up treatment or physical therapy for his finger.   Am. Compl., Doc. No. 15, at ¶ 97.

Crediting Ewing's allegations as true, APRN Morant knowingly acted against a doctor's orders when she refused to provide him with the pail for his finger rehabilitation.   *Id.* at ¶¶ 78-79.   A defendant's intentional failure to follow a doctor's order is sufficient to state a cognizable claim for deliberate indifference to medical needs.   *Quint v. Martin*, 2023 WL 319232, at *5 (D. Conn. Jan. 19, 2023) ("Intentionally failing to follow a doctor's order is sufficient to state a cognizable claim for deliberate indifference to medical needs."); *see also Benn v. Nassau Cnty.*, 2010 WL 2976540, at *6 (E.D.N.Y. July 22, 2010) (failure to comply with a doctor's order sufficient to survive initial review); *Woods v. Goord*, 2002 WL 731691, at *5 (S.D.N.Y. Apr. 23, 2002) (allegation that doctor ignored surgeon's order sufficient to survive motion to dismiss).

Because those allegations suggest that APRN Morant may have acted with deliberate indifference to Ewing's medical needs, I will permit Ewing to proceed on his Eighth Amendment claim against APRN Moran in her individual capacity for further development of the record.

To the extent Ewing claims APRN Morant acted with deliberate indifference to his need for additional, or different, treatment and rehabilitation than ordered by Dr. Maletz, I dismiss such claims for the same reasons discussed above regarding his claim against Nurse Supervisor Johnson.   28 U.S.C. § 1915A(b)(1).

### 6.    Nurse Supervisor Figueroa

Ewing also claims Nurse Supervisor Figueroa acted with Eighth Amendment deliberate indifference by failing to provide follow-up treatment in compliance with the doctor's order, adequate physical therapy, and failed to intervene to ensure his medical needs were met.   Am. Compl., Doc. No. 15, at ¶ 98.   But Ewing's factual allegations about Nurse Supervisor Figueroa are limited to his assertion that she failed to answer his inmate request concerning inadequate medical treatment at the UConn Medical Center emergency room, *see id.* at ¶¶ 65, 71, and an allegation that a plaintiff sent a grievance to a prison official and received no response is not alone sufficient to state a claim for liability under 42 U.S.C. § 1983.   *See Burgess v. Barone*, 2025 WL 685558, at *6 (D. Conn. Mar. 4, 2025) (inmate failed to state Eighth Amendment medical indifference claim "based only on [a Nurse's] alleged failure to respond to his inmate request."); *see also Alvarado v. Westchester Cnty.*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) ("a defendant's mere receipt of a letter or grievance, without personally investigating or acting thereon, is insufficient to establish personal involvement.") (citation omitted); *Simpson v. Rodas*, 2012 WL 4354832, at *8 (S.D.N.Y. Sept. 21, 2012) ("[W]riting to a supervisory official is insufficient to establish such personal involvement.").

Because no alleged facts reflect Nurse Supervisor Figueroa's conscious disregard of

Ewing's serious medical needs, I conclude Ewing has not stated a plausible Eighth Amendment claim against Figueroa and dismiss that claim.   28 U.S.C. § 1915A(b)(1).

**B.      Fourteenth Amendment Procedural Due Process**

Ewing complains that Nurse Supervisor Figueroa and HSAR Coordinator Cyr violated his right to procedural due process under the Fourteenth Amendment.   Am. Compl., Doc. No. 15, at ¶¶ 99, 100.   Ewing complains that Nurse Supervisor Figueroa failed to respond to his inmate request and HSAR Coordinator Cyr failed to afford him the "proper action of recourse" under DOC Administrative Directive 8.9 and obstructed his ability "to be heard at a higher level[.]"   *Id.*

First, I note that an inmate does not have a procedural due process right to have his claim investigated in a manner he deems appropriate or to have any particular outcome of the grievance process.   *Torres v. Mazzuca,* 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003).   It is well established that an inmate has no constitutional right to the proper application of prison grievance procedures.   *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (summary order). In *Riddick*, the Second Circuit noted that the prisoner's "claim that defendants violated his due process rights by restricting his access to the prison's grievance procedures confuses a state-created procedural entitlement with a constitutional right" and that "neither state policies nor state statutes create federally protected due process entitlements to specific state-mandated procedures."   *Id.* at 13 (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (internal quotation marks and ellipsis omitted)); *see also, e.g., Schlosser v. Manuel*, 2020 WL 127700, at *5 (D. Conn. Jan. 10, 2020) ("Inmates have no constitutional entitlement to grievance

procedures, to receive a response to a grievance, or to have a grievance properly processed."
(citing cases)).

Accordingly, Ewing fails to allege a plausible constitutional claim for denial of access to
those procedures or for denial of access to the courts based on the alleged interference with his
access to those procedures. *See Lopez v. McGill*, 2009 WL 179787, at *6 (D. Conn. Jan. 21,
2009) ("[P]laintiff's claim that the grievance restriction directly limits his First Amendment right
to petition the government for redress of grievances fails as a matter of law.").

I recognize inmates "have a constitutional right of access to the courts that may not be
unreasonably obstructed by the actions of prison officials." *See Abrams v. Erfe*, 2018 WL
691714, at *16 (D. Conn. Feb. 2, 2018) (citation omitted). And it is true that the Prison
Litigation Reform Act requires exhaustion of an inmate's administrative remedies prior to filing
suit. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions
under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,
prison, or other correctional facility until such administrative remedies as are available are
exhausted."). Thus, I read Ewing's Fourteenth Amendment claim as alleging a denial of his
constitutional right to access the courts.

The PLRA requires an inmate to exhaust only *available* administrative remedies before
filing a federal lawsuit regarding prison conditions. *See Ross v. Blake*, 578 U.S. 632 (2016). In
*Ross*, the Supreme Court explained that a court could find that administrative remedies were not
available to a prisoner under the PLRA when "prison administrators thwart inmates from taking
advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*
at 644. Thus, if Nurse Supervisor Figueroa and HSAR Coordinator Cyr acted to obstruct

17

Ewing's efforts to exhaust his administrative remedies, they would have deprived him of his "available" administrative remedies. *Crenshaw v. Dep't of Corr.*, 2024 WL 3638242, at *10 (D. Conn. Aug. 1, 2024). Under such circumstances, Ewing would be excused from the PLRA's exhaustion requirement because administrative remedies would be unavailable to him. *See Baltas v. Rivera*, 2019 WL 3944435, at *10–11 (D. Conn. Aug. 21, 2019) (dismissing similar grievance interference claim on initial review because "[i]f prison officials 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation' the grievance procedure would be unavailable and the inmate would be able to proceed to federal court.") (citing *Ross*, 578 U.S. at 644).

Ewing has not adequately alleged that Nurse Supervisor Figueroa and HSAR Coordinator Cyr obstructed his access to administrative remedies. Accordingly, I must dismiss Ewing's Fourteenth Amendment procedural due process claims as not plausible. 28 U.S.C. § 1915A(b)(1).

## C.    Official Capacity Claims

In addition to his individual capacity claims for monetary relief, Ewing has sued Defendants in their official capacities. Am. Compl., Doc. No. 15, at ¶¶ 2-9. He requests declaratory judgments that Defendants violated his constitutional rights an injunction requiring Defendants to pay for his medical treatment related to his left hand injury for the remainder of his life. *Id.* at ¶ 101(H). To the extent Ewing seeks damages against any Defendants in their official capacities, that request is dismissed as barred by the Eleventh Amendment. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).

Under *Ex parte Young*, 209 U.S. 123 (1908), Ewing "may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *Deposit Ins. Agency*, 482 F.3d at 617 (citation omitted). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation omitted). When awarding injunctive relief, a court must make sure that such relief is narrowly tailored to the scope of the violation and extends no further than necessary to remedy the violation. *Brown v. Plata*, 563 U.S. 493, 531 (2011). Thus, a court should reject "remedial orders that unnecessarily reach out to improve prison conditions other than those that violate the Constitution." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

In his Amended Complaint, Ewing requests the Court order payment to cover medical expenses during his life time for injuries to his left hand. Am. Compl., Doc. No. 15, at ¶ 101(H). That request extends further than necessary to remedy any plausible violation of Ewing's rights that is alleged in this case. First, as described previously, Ewing is permitted to proceed in this action on his claim against APRN Moran for deliberate indifference to his medical need for a pail for his finger rehabilitation. An order for life time coverage of all medical treatment for his left hand goes beyond what is necessary to redress any ongoing Eighth Amendment violation for deliberate indifference to his need for the pail. In addition, his requested injunctive relief essentially seeks compensatory damages for his past injury rather than relief for an ongoing injury that cannot be otherwise remedied by law. *See Jackson Dairy, Inc.*

19

*v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (In order for permanent injunctive relief to be appropriate, plaintiff must demonstrate an "injury for which a monetary award cannot be adequate compensation."); *see also Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 404 (2d Cir. 2004) ("If an injury can be appropriately compensated by an award of monetary damages, then an adequate remedy at law exists, and no irreparable injury may be found to justify specific relief.").

Finally, Ewing's claims for a declaratory judgment that Defendants violated his constitutional rights are barred because the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993); *see also Green v. Mansour*, 474 U.S. 64, 71 (1985).

Accordingly, Ewing's claims for official capacity relief are dismissed as not plausible.

## ORDERS

The Court enters the following orders:

(1) The case shall proceed on Ewing's Eighth Amendment deliberate indifference claim against APRN Morant in her individual capacity.    All other claims, including official capacity claims, are DISMISSED without prejudice.    The clerk is instructed to terminated as Defendants Dr. Blomstrom, Dr. Yang, Dr. Maletz, HSAR Coordinator Cyr, Nurse Supervisor Johnson, and Nurse Supervisor Figueroa.

I afford Ewing one opportunity to file an amended complaint if he believes in good faith that he can correct the deficiencies of his claims identified in this Initial Review Order.    Ewing is advised that any amended complaint will completely replace his prior complaint in this action,

and that no portion of any prior complaint shall be incorporated into his amended complaint by reference.

(2) The Clerk shall verify the current work address for APRN Morant with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint and attachments to her at her confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If Defendant Morant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on her, and she shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Defendant Morant shall file a response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to her.   If Defendant Morant chooses to file an answer, she shall admit or deny the allegations and respond to the cognizable claims recited above.   Defendant Morant may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court.   The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed.   If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Ewing changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the court.   Failure to do so can result in the dismissal of the case.   He must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.   It is not enough to just put the new address on a letter without indicating that it is a new address.   If he has more than one pending case, he should indicate all of the case numbers in the notification of change of address.   He should also notify Defendant Morant or her counsel of his new address.

It is so ordered.

Dated at Bridgeport, Connecticut this 12th day of September 2025.


/s/ Stefan R.   Underhill
Stefan R. Underhill
United States District Judge