**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ANTHONY EWING,<br>    Plaintiff,<br><br>    v.<br><br>SARA A. BLOMSTROM, et al.,<br>    Defendants. | No. 3:25-cv-178 (SRU) |

**<u>INITIAL REVIEW ORDER</u>**

Anthony Ewing is a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC") at Osborn Correctional Institution ("Osborn").[1]   In an earlier amended complaint, Ewing asserted claims under 42 U.S.C. § 1983 for Eighth and Fourteenth Amendment violations against Dr. Sara Blomstrom, Dr. Clifford Yang, Advanced Registered Nurse ("APRN") Morant, Dr. Maletz, Nurse Supervisor Keisha Johnson, Nurse Supervisor Temple Figueroa, and Health Services Administrative Remedy ("HSAR") Coordinator Michelle Cyr in their individual and official capacities.   *See* Am. Compl., Doc. No. 15.   After an initial review under 28 U.S.C. § 1915A, I permitted Ewing to proceed on his Eighth Amendment claim against APRN Morant in her individual capacity.   Initial Review Order ("IRO"), Doc. No. 38, at 1.   I dismissed all other claims but afforded Ewing the opportunity to file a second amended complaint to correct the deficiencies of his claims.   *Id.* at 20.

---

[1] I may "take judicial notice of relevant matters of public record."   *Sanchez v. RN Debbie*, 2018 WL 5314916, at *2 n.4 (D. Conn. Oct. 26, 2018) (citing *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012)).   The publicly-available DOC website shows that Ewing was sentenced on October 25, 2023 to a term that has not yet expired and that he is still housed at Osborn. https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=238705 (last visited March 3, 2026).

1

Ewing has now filed his second amended complaint. Sec. Am. Compl., Doc. No. 42. In it, he lists as defendants Dr. Blomstrom, Dr. Yang, APRN Morant, Dr. Maletz, and APRN Campbell (collectively, "Defendants").[2] *Id.* ¶¶ 3-7. He claims that the Defendants violated the Eighth and Fourteenth Amendments and seeks both monetary damages and equitable relief. *Id.* at 27-29.

## I.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from that relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of

---

[2] Under Rule 10(a) of the Federal Rules of Civil Procedure, a complaint must include the names of all parties in the case caption. *See* Fed. R. Civ. P 10(a). Plaintiff's case caption indicates the defendants as "Dr. Blomstrom, et al." Sec. Am. Compl., Doc. No. 42., at 2. In his list of parties, he includes Dr. Blomstrom, Dr. Yang, APRN Morant, Dr. Maletz, and APRN Campbell. *Id.* ¶ 3-7. Therefore, Ewing's Second Amended Complaint shows his intent to assert claims against Dr. Blomstrom, Dr. Yang, APRN Morant, Dr. Maletz, and APRN Campbell. *See Imperato v. Otsego Cnty. Sheriff's Dep't.*, 2016 WL 1466545, at *26 (N.D.N.Y. April 14, 2016) (internal citation omitted) ("[C]ourts have found pro se complaints to sufficiently plead claims against defendants not named in the caption when there are adequate factual allegations to establish that the plaintiff intended them as defendants."). I do not consider any claims against individuals who are not named in his list of parties.

solicitude for *pro se* litigants).

## II.    ALLEGATIONS[3]

Ewing alleges the following facts, which I consider to be true for purposes of initial review.

On November 22, 2024, Ewing was involved in a physical altercation with another inmate.   Sec. Am. Compl., Doc. No. 42, ¶ 9.   After a code blue was called, several correctional officers broke up the physical altercation.   *Id.* ¶ 11.   Officers handcuffed Ewing behind his back and escorted him to the medical treatment room, where his handcuffs were removed so that a nurse could examine his injuries.   *Id.* ¶¶ 12-13.   Lieutenants Rodriquez and Clayton instructed the correctional officers escorting Ewing to remove his handcuffs so that he could be examined by a nurse.   *Id.* ¶ 14.

Ewing sustained abrasions to his neck and his left hand's third and fourth fingers, and experienced slight swelling on his fourth knuckle.   *Id.* ¶ 15.   Because of Ewing's pain, swelling, disfigurement of his left fourth finger, and his inability to make a fist, APRN Morant arranged for his transport to the UConn Health Center emergency room for X-rays and further evaluation. *Id.* ¶ 16.

Lieutenants Rodriquez and Clayton instructed the escorting correctional staff to shackle Ewing's feet, handcuff his wrists, and secure him in a belly chain and black box.   *Id.* ¶ 17. Ewing was then put in a vehicle and transported to the UConn Health Center emergency room.

---

[3] Ewing refers to medical records that he has submitted with his Second Amended Complaint and that the defendants submitted in support of their opposition to the motion for preliminary injunction and temporary restraining order.   *See* Medical Records (under seal), Doc. No. 24; Medical Records (under seal), Doc. No. 43. Although a plaintiff cannot plead the elements of a constitutional claim by relying on information about a defendant's conduct contained in an exhibit, *Bey v. Doe*, 2025 WL 1167490, at *1 n.2 (D. Conn. Apr. 21, 2025), I consider Ewing's medical records when necessary for clarification of his claims.

*Id.*   Upon arrival at the emergency room, Ewing was placed in a wheelchair.   *Id.* ¶ 18.   After intake, Ewing was brought to a room, helped into the bed, and handcuffed to that bed by correctional officers.   *Id.* ¶¶ 18-20.

Dr. Blomstrom arrived to conduct a physical examination and spoke with Ewing about his injuries.   *Id.* ¶ 21.   Ewing told her that his finger was fractured and that he was in significant pain.   *Id.* ¶ 23.   Dr. Blomstrom noted that Ewing had a finger fracture and stated that she would order X-rays, a DOC-approved splint, and Ibuprofen.   *Id.* ¶ 24.   She then left and did not return. *Id.* ¶ 25.   Moments after Dr. Blomstrom left the room, a nurse provided Ewing with Ibuprofen. *Id.* ¶ 26.   A radiology technician named Morales took X-rays for Ewing's injured finger.   *Id.* ¶ 27.

Morales forwarded Ewing's X-rays and the medical exam report to Dr. Yang.   *Id.* ¶ 83. Dr. Yang reviewed Ewing's X-rays for three minutes before he concluded that Ewing had not sustained an "acute fracture or dislocation," doc. no. 24 at 166-67, and did not need a splint or surgery.   Sec. Am. Compl., Doc. No. 42, ¶¶ 84, 87.

Sometime later, the nurse returned to advise Ewing that he was being discharged because he had no fractures.   *Id.* ¶ 28.   Ewing inquired whether he would receive the splint recommended by Dr. Blomstrom.   *Id.* ¶ 29.   The nurse stated that Ewing's finger had no fractures or dislocations and advised that correctional facility staff could "buddy tape it for comfort."   *Id.* ¶ 30.

Ewing later told Correction Officer Mendoza that he knew his finger was fractured and needed a splint.   *Id.* ¶ 34.

Ewing was discharged and returned to Osborn without a splint for his finger.   *Id.* ¶ 35.

The next day, November 23, 2024, Ewing woke up in the morning with excruciating pain and throbbing in his whole hand.  *Id.* ¶ 36.  His fourth left finger was severely swollen and discolored.  *Id.*  Ewing took Tylenol to alleviate his pain.  *Id.*

Ewing notified a correction officer about his pain, and the correction officer advised Ewing to ask the nurse who would be arriving soon for the medication pass.  *Id.* ¶¶ 37-38. Later that morning, Ewing stopped Correction Officer Batiste and Nurse Heidi and requested that he return to the hospital for a second opinion about his finger.  *Id.* ¶ 40.  They both expressed shock at the discoloration and disfigurement of Ewing's finger, and Nurse Heidi promised to let the treatment nurse know about his finger.  *Id.* ¶¶ 41-42.

At 10:00 A.M., Ewing stopped Correction Officer Batiste to inquire why it was taking so long for a nurse to check on his medical issue.  *Id.* ¶ 43.  Officer Batiste later informed Ewing that the nurse in the treatment center was aware of Ewing's complaint but that medical staff had been busy and would get to Ewing.  *Id.* ¶ 45.

At noon that day, Ewing stopped a mental health staff member when she was doing her rounds.  *Id.* ¶ 46.  Ewing showed his finger to the staff member, expressed his frustration, anxiety, and pain, and explained that he had made multiple requests to be seen by medical staff, to no avail.  *Id.*  The staff member responded that she would call the medical unit right away. *Id.* ¶ 47.  She later returned and informed Ewing that the nurse in the treatment center had told her that the medical staff was aware of Ewing's complaint, that they had been busy that morning, and that he would be seen.  *Id.* ¶ 48.

At 12:30 P.M., Nurse Lewis and another nurse arrived at his cell to examine his finger injury.  *Id.* ¶ 49.  Ewing showed them his finger and expressed that he was experiencing

excruciating pain, anxiety, and frustration and that he wanted a second opinion.  *Id.* ¶ 50. Nurse Lewis promised to review his X-rays from the day before.  *Id.* ¶ 51.

At 1:00 P.M., Ewing was called to the medical treatment room to see Nurse Keri.  *Id.* ¶ 52.  She explained that she wanted to examine Ewing's finger in better lighting and had reviewed his X-rays.  *Id.* ¶ 53.  She then noted that "something just does not seem right . . . ." *Id.*  Ewing informed her that the hospital staff had not provided him with a splint or any medical treatment.  *Id.* ¶ 55.  Nurse Keri arranged for Ewing's transport to the Johnson Memorial Hospital emergency room for a second opinion.  *Id.* ¶ 56.  After his intake at Johnson Memorial Hospital, a nurse spoke to him about his injuries and ordered X-rays.  *Id.* ¶ 59.  A technician took the X-rays, and a doctor told Ewing that he had a non-displaced fracture and would be provided with pain medication and a splint.  *Id.* ¶¶ 60-61.  Ewing received pain medication by injection and had a splint placed on his finger.  *Id.* ¶ 62.  Ewing was then discharged and returned to Osborn.  *Id.* ¶ 63.

On November 24, 2024, Ewing filed an inmate request (CN 9601) for copies of his emergency room medical records relevant to his visits on November 22 and 23, 2024.  *Id.* ¶ 65. Ewing also filed an inmate request to Nurse Supervisor Figueroa complaining that he was discharged without a proper diagnosis or adequate treatment by UConn Health Center staff.  *Id.* ¶ 66.

The next day, November 25, 2024, an APRN checked his splint and provided him with a pass that allowed him to visit the medical unit every day so that medical staff could check his finger and the metal in his splint.  *Id.* ¶ 67.  The same APRN also advised him that he was scheduled for more X-rays on December 16, 2024.  *Id.*

6

Ewing informed the APRN that he felt less pain when his finger was splinted and that without the splint he experienced "shocking and excruciating pain from his finger throughout his arm, and into his brain" with every movement.   *Id.* ¶ 68.

On December 4, 2024, Ewing wrote another inmate request for copies of his medical records for his two emergency room visits.   *Id.* ¶ 69.

On December 16, 2024, Ewing filed an inmate request to inquire why the X-rays that were scheduled for that day had not been taken.   *Id.* ¶ 70.   That same day, he received his medical records for his emergency room visits and relevant DOC records.   *Id.* ¶ 71.

On December 18, 2024, Ewing filed another inmate request to Nurse Supervisor Figueroa asserting that UConn Health Center staff had disregarded his medical needs.   *Id.* ¶ 72.

On January 6, 2025, Ewing spoke with APRN Morant about being provided with a small pail so that Ewing could follow Dr. Maletz's instructions to submerge his hand in warm water and push down on his finger.   *Id.* ¶ 74.   APRN Morant denied Ewing's request because Ewing did not "reside in the hospital."   *Id.*   Ewing explained that doing the finger exercises in water assisted with his pain tolerance.   *Id.* ¶ 75.

On January 7, 2025, Ewing spoke with the orthopedist, Dr. Maletz, to discuss the recommended rehabilitation exercises and the results of the most recent X-rays.   *Id.* ¶ 76.   He informed Dr. Maletz that pushing down on his dry finger was "not enough" and believed that his condition was getting worse and may require surgery.   *Id.*   Dr. Maletz entered an order for Ewing to receive a small pail for his finger rehabilitation.   *Id.* ¶ 79.

On January 9, 2025, Ewing spoke again to APRN Morant about receiving the small pail ordered by Dr. Maletz for his finger rehabilitation exercises.  *Id.* ¶ 80.  She replied that he would not receive a pail because he was not staying in the hospital.  *Id.* ¶ 81.

On January 10, 2025, Ewing filed an administrative remedy to the medical unit and requested the pail.  *Id.* ¶ 82.

On April 21, 2025, Ewing met with APRN Campbell who informed him that she was his new medical provider and that she would conduct a Chronic Care Appointment.[4]  *Id.* ¶ 88.  During the examination, she inquired whether Ewing was experiencing physical pain.  *Id.* ¶ 89.  He explained that he had "severe pain," a stiff, swollen, and disfigured fourth left finger, and that he was unable to "grip properly" or "make a proper fist" and lacked "full function and mobility of his left hand and 4th finger."  *Id.*  During the examination, Ewing was not able to fully open and close his left hand and could not grip anything properly.  *Id.* ¶ 92.  After the examination, APRN Campbell informed Ewing that his finger had "healed wrong" and asked when he had fractured the finger.  *Id.* ¶ 90.  Ewing responded that he fractured the finger in November 2024, and APRN Campbell advised Ewing that he needed to more frequently move his finger or risk becoming handicapped.  *Id.* ¶ 91.

Ewing alleges that APRN Campbell misrepresented the condition of his finger in her April 25, 2025 declaration.  *Id*. ¶¶ 109-11; *see* Campbell Decl., Doc. No. 23-1.

### III.    DISCUSSION

---

[4] In her medical notes for Ewing's medical appointment on April 21, 2025, APRN Campbell recorded that: Ewing complained of finger pain at level 5 out of 10; his finger was swollen; she provided him with a roll of ace bandage to exercise his finger; and he needed a referral to see an orthopedist.  Medical Records (under seal), Doc. No. 43, at 11-13.

Ewing appears to allege that the inadequate medical treatment he received for his injured finger constitutes both an Eighth Amendment and Fourteenth Amendment violation.

"The Eighth Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment, and prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes."  *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991) (cleaned up).   Because Ewing was a sentenced prisoner at the time relevant to this action, the Eighth Amendment—not the Fourteenth— governs his claims about inadequate medical treatment for his finger.   *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (holding that deliberate indifference claims of pretrial detainees are governed by the Fourteenth Amendment whereas claims of sentenced inmates are governed by the Eighth Amendment).

In *Estelle v Gamble*, the U.S. Supreme Court held that the Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners . . . ."   429 U.S. 97, 104 (1976). For Ewing to state a plausible claim that any defendant was deliberately indifferent to his medical needs in violation of the Eighth Amendment, he must allege that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'"   *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)).

Under the objective prong, the inmate's medical need or condition must be "a serious one."   *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (internal citations omitted). Regarding the subjective component of a deliberate indifference claim, a plaintiff must show that the defendant "act[ed] with a sufficiently culpable state of mind."   *Chance v. Armstrong*, 143

F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)); *see Salahuddin*, 467 F.3d at 280 ("This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06. "[M]ere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, *i.e.*, . . . a conscious disregard of a substantial risk of serious harm." *Chance*, 143 F.3d at 703 (internal citation omitted).

Therefore, an inmate may not succeed on an Eighth Amendment claim for a negligent "delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs[.]" *Harrison v. Barkley*, 219 F.3d 132, 139 (2d Cir. 2000). Of course, "[c]onsciously disregarding an inmate's legitimate medical need is not mere medical malpractice." *Id.* (cleaned up). But the "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703; *see also Hathaway*, 37 F.3d at 70 (Jacobs, J., dissenting) (internal citation omitted) ("We do not sit as a medical board of review. Where the dispute concerns not the absence of help but the choice of a certain course of treatment, or evidenced mere disagreement with considered medical judgment, we will not second guess the doctors.").

### A. Individual Capacity Claims for Damages

I first consider whether Ewing's Second Amended Complaint alleges any plausible Eighth Amendment claims for damages. A plaintiff seeking monetary damages from a

defendant must allege facts that establish that the defendant was personally involved in the alleged constitutional violation.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal citation omitted) (explaining personal involvement of defendants in constitutional deprivations "is a prerequisite to an award of damages under § 1983"); *see also Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

For purposes of initial review, I assume that Ewing has a sufficiently serious finger injury to satisfy the objective element of the Eighth Amendment analysis.

### 1.  Dr. Blomstrom

In his Second Amended Complaint, Ewing asserts that Dr. Blomstrom acted recklessly when she discharged him without a splint even though she had initially observed that his finger was likely fractured.  Sec. Am. Compl., Doc. No. 42, ¶¶ 93-97.  I previously dismissed Ewing's Eighth Amendment claim against Dr. Blomstrom because no alleged facts suggested that she acted with a culpable state of mind.  For similar reasons, Ewing has not alleged facts in his Second Amended Complaint to support an Eighth Amendment deliberate indifference claim against Dr. Blomstrom.

Ewing alleges that Dr. Blomstrom was aware as a medical doctor that a finger injury that is not timely treated can incur future complications.  *Id.* ¶ 93.  That allegation is insufficient to show that Dr. Blomstrom acted recklessly when she made the decision to discharge Ewing without a splint.  *See, e.g., Ellis v. Kim*, 2024 WL 4882702, at *6 (S.D.N.Y. Nov. 25, 2024) (noting that an allegation that a medical provider "'was aware of the dangers of [P]laintiff taking the blood thinner prior to the oral surgery' but still prescribed the medication" was conclusory and insufficient to support an Eighth Amendment claim).

The alleged facts do not support the inference that Dr. Blomstrom was aware that Ewing's discharge without a splint or further medical treatment would exacerbate his finger injury and pain.   *See Salahuddin*, 467 F.3d at 279–80.   Indeed, Ewing's Second Amended Complaint suggests that Dr. Blomstrom changed her decision about Ewing's need for a splint because she relied upon Dr. Yang's medical assessment that the X-ray did not show an "acute fracture or dislocation."   *See* Sec. Am. Compl., Doc. No. 42, ¶¶ 84, 87; Medical Record, Doc. No. 24, at 166-67.   At most, Ewing's allegations may support a claim that Dr. Blomstrom acted negligently or engaged in medical malpractice, neither of which is sufficient to support a claim of deliberate indifference.   *See Hathaway,* 37 F.3d at 66 (internal citation omitted) ("Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm."); *see also Jusino v. Gallagher*, 2022 WL 2078159, at *4 (D. Conn. June 9, 2022) (citing *Green v. McLaughlin*, 480 F. App'x 44, 48 (2d Cir. 2012)) ("Negligence— which might support a claim for medical malpractice—does not rise to the level of deliberate indifference and is not cognizable under section 1983.").

Accordingly, I conclude that Ewing's Eighth Amendment claim against Dr. Blomstrom is not plausible and must be dismissed.   28 U.S.C. § 1915A(b)(1).

**2.  Dr. Yang**

Ewing complains that Dr. Yang inadequately reviewed the X-ray of Ewing's fingers and that Dr. Yang's three-minute review resulted in misdiagnosis and mistreatment of Ewing's finger injury.   Sec. Am. Compl., Doc. No. 42, ¶¶ 98-102.   Ewing asserts that Dr. Yang was a "trained medical professional" who "should have been aware of or was aware of such dangers of not treating a 'Chronic Tendon Injury' . . . ."   *Id.* ¶ 98.

12

Although Dr. Yang misdiagnosed Ewing's finger injury, it is well established that "the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law," and so "not every lapse in prison medical care will rise to the level of a constitutional violation." *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003)); *Harris v. Westchester Cnty. Med. Ctr.*, 2011 WL 2637429, at *3 (S.D.N.Y. July 6, 2011) ("[W]ithout more, allegations of negligent treatment and misdiagnosis do not state a cause of action under the Eighth Amendment.") (cleaned up).   A medical provider may be deliberately indifferent, however, if they consciously provide an inmate with "an easier and less efficacious" treatment plan, particularly if the provider does so because of ulterior motives.   *Chance*, 143 F.3d at 703–04 (internal citation omitted); *see also Braham v. Perelmuter*, 2017 WL 3222532, at *16–17 (D. Conn. July 28, 2017).   Put differently, a medical provider may be deliberately indifferent if the choice of treatment did not derive from sound medical judgment.   *See Chance*, 143 F.3d at 703–04.   Ewing has not alleged facts to support an inference that Dr. Yang evaluated Ewing's X-ray with an improper motive or that Dr. Yang diverged from his medical judgment in assessing the X-ray.   The facts also do not support an inference that Dr. Yang was aware that his reading of Ewing's X-ray would result in Ewing's increased pain and suffering.

Because the alleged facts do not support an inference that Dr. Yang acted with conscious disregard to Ewing's medical needs, I dismiss Ewing's Eighth Amendment claim against Dr. Yang.   28 U.S.C. § 1915A(b)(1).

### 3.  Dr. Maletz

Ewing maintains that Dr. Maletz failed to provide the proper standard of care for orthopedic surgeons.   Sec. Am. Compl., Doc. No. 42, ¶¶ 103-07.   Specifically, Ewing

13

complains that Dr. Maletz did not provide him with adequate follow-up treatment.  *Id.*   He

claims that Dr. Maletz did not alter his treatment even after Ewing had suffered three months of

pain under a conservative care plan.  *Id.* ¶ 103.

Ewing disagrees with Dr. Maletz's medical judgment regarding his finger rehabilitation

plan.   But the mere fact that Ewing may have preferred a different treatment plan does not give

rise to an Eighth Amendment claim when the treatment given is adequate.  *Chance,* 143 F.3d at

703; *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (concluding that a prisoner's claim that

provision of Motrin was insufficient and that he required stronger pain medication did not state a

claim of deliberate indifference).   Ewing does not suggest that Dr. Maletz failed to alter Ewing's

finger rehabilitation plan because of any improper incentives, and Ewing does not show that Dr.

Maletz acted without sound medical judgment.

Absent alleged facts to support an inference that Dr. Maletz acted with deliberate

indifference to Ewing's treatment needs, I dismiss Ewing's Eighth Amendment claim against Dr.

Maletz as not plausible.   28 U.S.C. § 1915A(b)(1).

### 5.  APRN Morant

In my prior Initial Review Order, I concluded that Ewing had stated a plausible Eighth

Amendment claim against APRN Morant for knowingly acting against a doctor's orders.   IRO,

Doc. No. 38, at 14.   In his Second Amended Complaint, Ewing asserts the same claim and

alleges those same facts concerning APRN Morant's refusal to provide him with the pail for his

finger rehabilitation.   Sec. Am. Compl., Doc. No. 42, ¶¶ 80-81, 108.   Therefore, Ewing may

proceed on his Eighth Amendment claim against APRN Morant in her individual capacity.

### 6.  APRN Campbell

14

Ewing complains that APRN Campbell acted to delay his surgery when she misrepresented his finger's condition in her declaration submitted in support of the Defendants' opposition to Ewing's earlier motion for injunctive relief. Sec. Am. Compl., Doc. No. 42, ¶¶ 109-11; *see* Campbell Decl., Doc. No. 23-1. Specifically, Ewing takes issue with APRN Campbell's assertion that she "had no concern of imminent risk to [Ewing's] health or wellbeing." Sec. Am. Compl., Doc. No. 42, ¶ 110; Campbell Decl., Doc. No. 23-1, ¶ 14. Ewing claims that "even a layperson can see that [his finger] is obviously painful, deviated and disfigured" and requires "some form of medical surgery . . . ." Sec. Am. Compl., Doc. No. 42, ¶ 110. Ewing also alleges that he will be able to prove that APRN Campbell committed perjury once he receives certain notes and reports. *Id.* ¶ 111.

Ewing cannot hold APRN Campbell liable for perjury. "Perjury is a crime" and does not rise to a civil cause of action. *Holliday v. Newington Police Dep't*, 2020 WL 509696, at *4 (D. Conn. Jan. 31, 2020) (citing *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002)).

Ewing's Eighth Amendment claim stems from his disagreement with APRN Campbell's statement that he was not in any imminent harm. Sec. Am. Compl., Doc. No. 42, ¶ 110. Ewing's disagreement with APRN Campbell's medical assessment about his treatment needs cannot alone support an Eighth Amendment claim of deliberate indifference, and Ewing has not otherwise alleged facts to suggest that APRN Campbell acted in conscious disregard of his serious medical needs. *See Chance*, 143 F.3d at 703.

Accordingly, I conclude Ewing has not stated a plausible Eighth Amendment claim against APRN Campbell, and his claim against her is dismissed. 28 U.S.C. § 1915A(b)(1).

**B. Official Capacity Claims**

Ewing has also sued the Defendants in their official capacities.   Sec. Am. Compl., Doc. No. 42, at 27-28.   He requests a declaratory judgment stating that Defendants violated his constitutional rights and for an injunctive order that provides him with medical treatment for his finger injury.   *Id.*

The Eleventh Amendment bars claims for damages against state officials in their official capacities.   *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).   An exception to that rule exists under the *Ex parte Young* doctrine, 209 U.S. 123 (1908), which allows for a plaintiff to "sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law."   *In re Deposit Ins. Agency*, 482 F.3d at 617 (citation omitted). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal citation omitted).   When awarding injunctive relief, a court must make sure that the relief is narrowly tailored to the scope of the violation and extends no further than necessary to remedy the violation.   *Brown v. Plata*, 563 U.S. 493, 531 (2011).   Therefore, a court should reject "remedial orders that unnecessarily reach out to improve prison conditions other than those that violate the Constitution."   *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

Ewing's request for a declaratory judgment that Defendants violated his constitutional rights is barred because the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past[.]"   *See P.R. Aqueduct & Sewer Auth.*

16

*v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *see also Green v. Mansour*, 474 U.S. 64, 71 (1985).   Ewing's strongest claim is his assertion that APRN Morant acted with deliberate indifference in violation of the Eighth Amendment when she refused to provide him with a pail that was ordered by a doctor to assist with Ewing's rehabilitation.   But APRN Morant's alleged deliberate indifference occurred in the past, and Ewing's Second Amended Complaint fails to show that APRN Morant's deliberate indifference is ongoing.

Accordingly, I dismiss Ewing's claims for official capacity relief because the Eleventh Amendment bars the relief he seeks.

### IV.   Conclusion

For the foregoing reasons, Ewing may proceed on his Eighth Amendment deliberate indifference claims against APRN Morant in her individual capacity, but all other claims, including official capacity claims, are **DISMISSED** without prejudice.

The Clerk is instructed to terminate Defendants Dr. Blomstrom, Dr. Yang, Dr. Maletz, and APRN Campbell from this case.

APRN Morant has already returned her waiver of service.   Doc. No. 41.   Accordingly, Defendant Morant is instructed to file a response to the Second Amended Complaint on or before May 23, 2026.

**SO ORDERED** at Bridgeport, Connecticut this 2nd day of April 2026.

/s/ Stefan R.   Underhill
Stefan R. Underhill
United States District Judge